UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EDNA WATKINS and ERNESTINE TATE,

                              Plaintiffs,

                    -v.-

HARLEM CENTER FOR NURSING AND
REHABILITATION, LLC and UNITY
FUNERAL CHAPELS, INC.,

                              Defendants.

20 Civ. 2919 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

This case arises out of the alleged mishandling of the body of decedent Rosa Lee Richardson ("Decedent") following her death in December 2019. Plaintiffs Edna Watkins and Ernestine Tate (collectively, "Plaintiffs"), both of whom are Decedent's daughters, bring claims against Defendants Unity Funeral Chapels, Inc. ("Unity"), and Harlem Center for Nursing and Rehabilitation, LLC ("Harlem Center," and with Unity, "Defendants"), for Defendants' alleged failure to take appropriate action upon Decedent's passing, resulting in the storage and subsequent decomposition of Decedent's body in an unrefrigerated closet. In particular, Plaintiffs bring claims against Unity for (i) breach of contract; (ii) breach of fiduciary duty; (iii) mishandling of remains; (iv) negligence; (v) negligent infliction of emotional distress; and (vi) punitive damages. Separately, Plaintiffs bring claims against Harlem Center for (i) mishandling of remains; (ii) negligence; (iii) negligent infliction of emotional distress; and (iv) punitive damages. Defendants have each moved to dismiss Plaintiffs' Second Amended Complaint under Federal Rule of Civil Procedure

12(b)(6).  For the reasons set forth herein, the Court grants in part and denies in part Defendants' motions.

## BACKGROUND[1]

### A.    Factual Background

#### 1.    The Parties

Plaintiffs Edna Watkins and Ernestine Tate are citizens of the State of Texas, and the daughters of Decedent.  (SAC ¶¶ 1-2).  Defendant Harlem Center is a nursing home and rehabilitation center located in New York, New

---

[1]    This Opinion draws its facts primarily from the Second Amended Complaint (the "SAC" (Dkt. #45)), the well-pleaded allegations of which are taken as true for purposes of this motion.  The Court also considers exhibits appended to Declaration of Erin O'Leary in Support of Unity's Motion to Dismiss ("O'Leary Decl." (Dkt. #52)), including the June 30, 2015 Preneed Agreement between Decedent and Unity (the "Preneed Agreement" (*id.*, Ex. B)).  On a motion to dismiss, the Court may consider any statements or documents incorporated by reference in the Complaint, documents that are "integral" to the Complaint even if they are not incorporated by reference, and matters of which judicial notice may be taken.  *See Chambers* v. *Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002).  A document is integral to the complaint "where the complaint relies heavily upon its terms and effect."  *Goel* v. *Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (quoting *Chambers*, 282 F.3d at 153).  As the SAC "relies heavily" on the Preneed Agreement, the Court finds that the agreement is integral to the SAC.  *See id.* (observing that "[i]n most instances" where courts deem a document "integral to the complaint," "the incorporated material is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls" (quoting *Glob. Network Commc'ns, Inc.* v. *City of New York*, 458 F.3d 150, 157 (2d Cir. 2006))).  The Court also considers matters of which judicial notice may be taken, including state regulations and documents retrieved from official government websites.  *See Richardson* v. *N.Y.C. Bd. of Educ.*, 711 F. App'x 11, 13 (2d Cir. 2017) (summary order) (noting that courts may take judicial notice of government regulations); *Wells Fargo Bank, N.A.* v. *Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 166 (S.D.N.Y. 2015) (finding that it was "clearly proper to take judicial notice" of "documents retrieved from official government websites"); *see also* Fed. R. Evid. 201(b) (permitting judicial notice of facts "not subject to reasonable dispute").

For ease of reference, the Court refers to Harlem Center's Memorandum of Law in Support of Its Motion to Dismiss as "Harlem Ctr. Br." (Dkt. #50); Plaintiffs' Memorandum of Opposition to Harlem Center's Motion to Dismiss as "Pl. Harlem Ctr. Opp." (Dkt. #56); and Harlem Center's Reply Memorandum of Law as "Harlem Ctr. Reply" (Dkt. #61).  Similarly, the Court refers to Unity's Memorandum of Law in Support of Its Motion to Dismiss as "Unity Br." (Dkt. #53); Plaintiffs' Memorandum of Law in Opposition to Unity's Motion as "Pl. Unity Opp." (Dkt. #59); and Unity's Reply Memorandum of Law as "Unity Reply" (Dkt. #60).

York, to which Decedent was admitted for rehabilitation following an accident in her home. (*Id.* at ¶¶ 3, 6). Defendant Unity is a funeral home also located in New York, New York, which entered into a Preneed Agreement with Decedent on June 30, 2015. (*Id.* at ¶¶ 4, 11; *see also* Preneed Agreement).

### 2.    Decedent's Preneed Agreement with Unity

Pursuant to Decedent's Preneed Agreement with Unity, Unity was responsible for performing a direct cremation of Decedent's body after her death, providing an urn in which to place Decedent's remains, and paying third parties for related goods and services, such as death certificate transcripts. (*See* Preneed Agreement). The Preneed Agreement lists the total price for the goods and services Decedent had selected as $2,200. (*Id.*). The Preneed Agreement indicates that Decedent did not pay any money to Unity on the day the two parties signed the Agreement. (*Id.*). Decedent and a Unity employee are the only two signatories to the Preneed Agreement. (*Id.*).

### 3.    Decedent's Passing and Plaintiffs' Discussions with Unity and Harlem Center

At some point prior to December 3, 2019, Decedent was admitted to Harlem Center for rehabilitation following an accident in her home. (SAC ¶ 6). When Decedent and Watkins spoke on the phone on December 3, 2019, Decedent expressed her desire to leave Harlem Center and return home. (*Id.* at ¶ 7). Sadly, the next day, December 4, 2019, Tate was notified that Decedent had passed away. (*Id.* at ¶ 8). Tate then shared the news with Watkins. (*Id.* at ¶ 9). Later, Harlem Center also notified Watkins of Decedent's passing. (*Id.*).

3

The day after learning of her mother's death, Watkins called Unity and explained that Watkins, Tate, and other family members were planning to drive from Texas to New York for Decedent's funeral.  (SAC ¶ 12).  During that conversation, Watkins was surprised to learn that Unity had not been informed of Decedent's passing.  (*Id.* at ¶ 13).  Upon receiving the news, Unity explained to Watkins that it lacked sufficient refrigeration space to store Decedent's body at that time.  (*Id.* at ¶ 14).  Unity told Watkins that it would call Harlem Center to explain the situation and direct Harlem Center to have the morgue retrieve and store Decedent's body until Unity had space for it.  (*Id.*).  Unity then called Harlem Center and relayed the information discussed in its call with Watkins.  (*Id.* at ¶ 15).  Plaintiffs allege that they entered into an oral contract with Unity over the course of these discussions (the "Oral Agreement").  (*Id.* at ¶ 62).

Following Unity's conversation with Harlem Center, Unity had a second call with Watkins.  (SAC ¶ 16).  During this conversation, Unity explained to Watkins that Harlem Center required Plaintiffs' permission before it could have the morgue retrieve Decedent's body.  (*Id.*).  There is no indication in the Second Amended Complaint that Plaintiffs gave permission to either Unity or Harlem Center to call the morgue.[2]  After Watkins's second phone call with

---

[2]     In their opposition brief, Plaintiffs claim for the first time that they did in fact provide permission to Unity to have the morgue retrieve Decedent's body from Harlem Center.  (*See* Pl. Unity Opp. 3-4 ("Unity informed Plaintiff Watkins that they did not have any refrigeration space and thus, with Plaintiff's permission, *which was given over the phone to Unity*, Unity was to call Harlem and Harlem was to contact the morgue for the removal of [D]ecedent's body." (emphasis added))).  The Court will not permit Plaintiffs to amend their pleading through their opposition papers.  *See Fac., Alumni, & Students Opposed to Racial References* v. *N.Y. Univ. L. Rev.*, No. 18 Civ. 9184 (ER), 2020 WL 1529311, at *7 (S.D.N.Y. Mar. 31, 2020) ("It is well established in this district that a plaintiff cannot amend his pleadings in his opposition briefs."); *see generally Wright* v.

4

Unity, Plaintiffs appear to have had no further communications with either Unity or Harlem Center until they arrived in New York.  (*See id.* at ¶¶ 29-31).

### 4.    Discovery of Decedent's Body

Plaintiffs arrived in New York on December 9, 2019, and traveled to Unity the same day.  (SAC ¶ 18).[3]  When Plaintiffs arrived at Unity, they were informed by Unity that it did not have possession of Decedent's body, that her body must be at one of the area's morgues, and that a Unity employee would attempt to locate it.  (*Id.* at ¶¶ 20-21).[4]  Unity eventually concluded, after making several unsuccessful calls, that Decedent's body had not been transported to a morgue, and that it must still be located at Harlem Center.  (*Id.* at ¶¶ 21-22).  Unity called Harlem Center and confirmed that Decedent's body had not been picked up and that it remained at Harlem Center.  (*Id.* at ¶¶ 22-25).  Unity then communicated that information to Plaintiffs.  (*Id.* at ¶ 34).

---

*Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (collecting cases for the proposition that a party may not amend its pleading through its opposition papers).

[3]    At times in their opposition briefing, Plaintiffs indicate that they arrived in New York on December 8, 2019.  (*See, e.g.*, Pl. Unity Opp. 3).  To avoid confusion, the Court will assume that the relevant events transpired on December 9, 2019, as alleged in Plaintiffs' SAC.  The Court notes that the exact date Plaintiffs arrived in New York does not affect its analysis of their claims.

[4]    For the second time, Plaintiffs attempt to use their opposition brief to supplement the allegations contained in their pleading.  This time, Plaintiffs allege that they reduced the Oral Agreement with Unity to writing when they arrived at Unity.  (*See* Pl. Unity Opp. 3 ("Plaintiffs' oral request of Unity to transport Decedent's remains was later reduced to writing on December 8, 2019.")).  For the reasons stated earlier, the Court will not consider allegations introduced for the first time in Plaintiffs' opposition papers.  *See supra* note 2.

Plaintiffs went to Harlem Center to retrieve Decedent's body. (SAC ¶ 35). After Plaintiffs had been made to wait for approximately two hours, Harlem Center staff brought Plaintiffs to a loading dock area, which was littered with boxes, furniture, and other refuse. (*Id.* at ¶¶ 36, 44; *see also id.*, Ex. B (photographs of loading dock area)). Plaintiffs then waited as a Harlem Center nurse struggled to find a key to unlock a storage closet that was connected to the loading dock. (*Id.* at ¶ 45). Finally, the Harlem Center nurse unlocked the closet door and Plaintiffs saw Decedent's body lying inside, surrounded by broken gurneys, on a gurney with a white cloth laid over it. (*Id.* at ¶ 46; *see also id.*, Ex. A (photographs of storage closet at time Decedent's body was discovered)). Plaintiffs further observed that the air-conditioning unit in the closet was set to 69 degrees Fahrenheit, and that Decedent's body had begun decomposing. (*Id.*, Ex. A (photograph of storage closet air-conditioning unit)). Due to Decedent's body's advanced decomposition, Plaintiffs were forced to have it immediately cremated. (*Id.* at ¶¶ 54, 58-59). Plaintiffs were unable to hold a viewing or service prior to the cremation. (*Id.* at ¶¶ 58-59).

## B.    Procedural Background

Watkins filed the original complaint in this case on April 9, 2020, naming Harlem Center and The Allure Group, Inc. (the "Allure Group"), as defendants. (Dkt. #1). On June 19, 2020, both Watkins and Tate filed an Amended Complaint, naming Harlem Center, the Allure Group, and Unity as defendants. (Dkt. #17). Harlem Center and the Allure Group submitted joint pre-motion letters communicating their intent to file motions to dismiss the Complaint,

and thereafter the Amended Complaint, on June 12, 2020, and July 2, 2020, respectively. (Dkt. #13, 18).

Following Unity's failure to appear in this matter, the Clerk of Court issued a certificate of default as to Unity on August 13, 2020. (Dkt. #28). On August 24, 2020, the Court entered an Order to Show Cause as to why default judgment should not be entered as to Unity. (Dkt. #31). On October 29, 2020, the Court held an Order to Show Cause hearing attended by all the parties, including Unity. (*See* Minute Entry for October 29, 2020). Unity subsequently filed a letter on November 12, 2020, stating that it would file a response to the Amended Complaint on or before December 3, 2020. (Dkt. #35). The following day, the Court provisionally dissolved its Order to Show Cause and scheduled a pretrial conference for December 3, 2020. (Dkt. #37).

On November 16, 2020, Harlem Center and the Allure Group renewed their request for a pre-motion conference regarding their anticipated motions to dismiss the Amended Complaint. (Dkt. #38). On December 1, 2020, Unity filed a letter stating that it too intended to move to dismiss the Amended Complaint. (Dkt. #41). The next day, the Court converted the December 3, 2020 pretrial conference to a pre-motion conference and adjourned the conference to December 9, 2020. (Dkt. #42). At the December 9, 2020 conference, the Court granted Plaintiffs leave to file a Second Amended Complaint on or before December 28, 2020, and granted Defendants leave to file motions to dismiss the Second Amended Complaint on or before January 29, 2021. (*See* Minute Entry for December 9, 2020).

7

Plaintiffs filed the Second Amended Complaint, the operative pleading in this matter, on December 28, 2020, naming Unity and Harlem Center, but not the Allure Group, as defendants. (Dkt. #45). Unity subsequently requested, and the Court granted, an extension of Defendants' deadline to submit their motions to dismiss to February 26, 2021. (Dkt. #47). Harlem Center and Unity both filed motions to dismiss the Second Amended Complaint on February 26, 2021. (Dkt. #48-50 (Harlem); #51-53 (Unity)). Plaintiffs filed their opposition papers on March 25, 2021. (Dkt. #56-58 (Harlem Opposition); #59 (Unity Opposition)). Defendants filed reply briefs on April 9, 2021. (Dkt. #60 (Unity); #61 (Harlem)).

## DISCUSSION

### A.    Legal Standards Under Federal Rule of Civil Procedure 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), Plaintiffs must plead sufficient factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009). When evaluating the viability of Plaintiffs' claims, the Court must accept as true all well-pleaded factual allegations contained in the operative Complaint. *Id.* Additionally, the Court may consider any written instrument attached to the Complaint as an exhibit, any statements or documents incorporated by reference in the Complaint, documents that are "integral" to the Complaint even if they are not

8

incorporated by reference, and matters of which judicial notice may be taken. *See Chambers* v. *Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002); *see generally Goel* v. *Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (discussing materials that may properly be considered in resolving a motion brought under Fed. R. Civ. Pro. 12(b)(6)).

**B.     The Court Grants in Part and Denies in Part Unity's Motion to Dismiss**

The Court first addresses Plaintiffs' claims against Unity, which include: (i) breach of contract; (ii) breach of fiduciary duty; (iii) mishandling of remains; (iv) negligence; (v) negligent infliction of emotional distress; and (vi) punitive damages.  Unity moves to dismiss each claim under Federal Rule of Civil Procedure 12(b)(6).  For the reasons that follow, the Court grants in part and denies in part Unity's motion.

**1.     The Court Dismisses Plaintiffs' Claim for Breach of Contract**

The Court begins with Plaintiffs' breach of contract claim.  "To state a claim in federal court for breach of contract under New York law, a complaint need only allege [i] the existence of an agreement, [ii] adequate performance of the contract by the plaintiff, [iii] breach of contract by the defendant, and [iv] damages."  *Harsco Corp.* v. *Segui*, 91 F.3d 337, 348 (2d Cir. 1996); *accord Frye* v. *Lagerstrom*, — F. App'x —, No. 20-3134, 2021 WL 4022695, at *4 (2d Cir. Sept. 3, 2021) (summary order).[5]

---

[5]      In their briefing, the parties assume that New York law applies in this case.  The parties' "implied consent … is sufficient to establish choice of law."  *Krumme* v. *Westpoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir. 2000); *see also Valentini* v. *Grp. Health Inc.*, No. 20 Civ. 9526 (JPC), 2021 WL 2444649, at *6 (S.D.N.Y. June 15, 2021) ("The parties

Plaintiffs allege that Unity breached two contracts: (i) the Preneed Agreement between Decedent and Unity (SAC ¶ 61), and (ii) the Oral Agreement ostensibly formed during Watkins's December 5, 2019 phone call with Unity following Decedent's death (*id.* at ¶ 62). Plaintiffs further allege that they suffered damages due to Unity's breaches of both agreements. (*Id.* at ¶ 65). In its motion to dismiss, Unity argues that Plaintiffs fail to allege the existence of any binding agreement and that, even assuming such an agreement did exist, Plaintiffs fail to allege a breach of the agreement. (Unity Br. 6-14). As the Court will explain below, it finds that Plaintiffs fail to state a claim for breach of contract under either the Preneed Agreement or the Oral Agreement.

### a.   The Preneed Agreement

The Court begins by addressing whether Plaintiffs can premise a breach of contract claim upon Decedent's Preneed Agreement with Unity, despite neither Plaintiff being a party to the Agreement. "Under New York law, non-parties can sue for breach only if they are an intended beneficiary of the contract." *Winston & Strawn LLP* v. *Mid-Atl. Arena, LLC*, No. 18 Civ. 11430 (CM), 2021 WL 3037478, at *4 (S.D.N.Y. July 19, 2021); *see also Suffolk Cty.* v. *Long Island Lighting Co.*, 728 F.2d 52, 63 (2d Cir. 1984) (noting that "absent a contractual relationship there can be no contractual remedy"). "[T]o establish rights as a third-party beneficiary, a party must establish [i] the existence of a valid and binding contract between other parties, [ii] that the contract was

do not dispute that New York law applies in this case, and the Court accordingly applies that law."). Accordingly, the Court applies New York law to each of Plaintiffs' claims.

intended for its benefit, and [iii] that the benefit to it is sufficiently immediate ... to indicate the assumption by the contracting parties of a duty to compensate it if the benefit is lost."  *Gerszberg* v. *Li & Fung (Trading) Ltd.*, 215 F. Supp. 3d 282, 291 (S.D.N.Y. 2016) (internal quotation marks omitted); *accord Veleron Holding, B.V.* v. *Morgan Stanley*, 694 F. App'x 858, 861 (2d Cir. 2017) (summary order).

Although "it is well-settled that the obligation to perform to the third party beneficiary need not be expressly stated in the contract," *Trans-Orient Marine Corp.* v. *Star Trading & Marine, Inc.*, 925 F.2d 566, 573 (2d Cir. 1991), "[t]he parties' intention to benefit the third party must appear from the four corners of the instrument," *Debary* v. *Harrah's Operating Co., Inc.*, 465 F. Supp. 2d 250, 263 (S.D.N.Y. 2006) (internal quotation marks omitted), *aff'd sub nom. Catskill Dev., L.L.C.* v. *Park Place Ent. Corp.*, 547 F.3d 115 (2d Cir. 2008); *see also Hillside Metro Assocs., LLC* v. *JPMorgan Chase Bank, Nat'l Ass'n*, 747 F.3d 44, 49 (2d Cir. 2014) ("Proving third-party beneficiary status requires that the contract terms clearly evidence an intent to permit enforcement by the third party in question." (internal quotation marks and alterations omitted)).

In addition to considering the "actual language" of the contract, a court may also consider the "the circumstances surrounding the transaction." *Subaru Distributors Corp.* v. *Subaru of Am., Inc.*, 425 F.3d 119, 124 (2d Cir. 2005).  "Dismissal of a third-party-beneficiary claim is appropriate where the contract rules out any intent to benefit the claimant, or where the complaint relies on language in the contract or other circumstances that will not support

the inference that the parties intended to confer a benefit on the claimant."
*Bayerische Landesbank, N.Y. Branch* v. *Aladdin Capital Mgmt. LLC*, 692 F.3d
42, 52-53 (2d Cir. 2012) (internal brackets omitted) (quoting *Subaru
Distributors Corp.*, 425 F.3d at 124).

Here, the Court finds that Plaintiffs are not third-party beneficiaries of
Decedent's Preneed Agreement.  *First*, the terms of the Preneed Agreement do
not demonstrate either Decedent's or Unity's intent to provide Plaintiffs with a
direct benefit.  Decedent's Agreement provides that Unity will (i) perform a
direct cremation, (ii) provide an urn for Decedent's ashes, (iii) obtain from third
parties certain items such as death certificate transcripts, and (iv) provide
certain basic services.  (*See* Preneed Agreement).[6]  Unity's first three

---

[6]     The Court pauses here to note that Plaintiffs and Unity disagree as to one of the terms
contained in the Preneed Agreement.  Specifically, the parties dispute whether the
Agreement requires Unity to provide certain "basic arrangements."  (Unity Br. 12-13; Pl.
Unity Opp. 2-3).  The Agreement defines basic arrangements to include "funeral
director, other staff, equipment and facilities to respond to initial request for service, the
arrangement conference, securing of necessary authorizations and coordination of
service plans with parties involved in the final disposition of the deceased."  (Preneed
Agreement).  Unity insists that Decedent declined to purchase these basic arrangements
from Unity, pointing to the fact that the form comprising the Agreement lists "basic
arrangements" as an optional service, and is marked "N/A".  (Unity Br. 13; *see also*
Preneed Agreement).  Unity contends that the "N/A" notation demonstrates that
Decedent was offered, but declined, to purchase basic arrangements services.  (Unity
Br. 13).  In response, Plaintiffs argue that basic arrangements were marked "N/A"
because they are automatically included in the price of direct cremations, the latter of
which Decedent did affirmatively select for inclusion in the Agreement.  (Pl. Unity
Opp. 2-3; *see also* Preneed Agreement).  In support of this argument, Plaintiffs refer to a
New York State Department of Health webpage, titled "A Consumer's Guide to Arranging
a Funeral," which explains that "[i]f you select direct burial or direct cremation, the
arrangements fee cannot be added since it is already figured into the prices for these
services."  (*Id.*, Ex. A).  The Court may take judicial notice of this webpage, as well as
related provisions of New York's Code of Rules and Regulations.  *See* Fed. R. Evid. 201;
*Richardson*, 711 F. App'x at 13; *Wells Fargo Bank, N.A.*, 127 F. Supp. at 166.  These
regulations require funeral homes to include "basic services" in the price of a direct
cremation, meaning that Unity was in turn required to provide Decedent with basic
services as part of her purchase of direct cremation.  *See* N.Y. Comp. Codes R. & Regs.
tit. 10, § 79.4(e)(1)(i) (providing that direct cremation prices "must include at least the
transfer of remains, services of the funeral director and staff, necessary authorizations,

obligations — to perform Decedent's direct cremation, provide an urn, and obtain death certificate transcripts and other related items — provide a clear and direct benefit to Decedent by ensuring that her desire to be cremated is carried out upon her death.  By contrast, neither obligation provides a direct benefit to Plaintiffs, who receive only the incidental benefit of having their mother's body disposed of in accordance with her wishes.

Likewise, Unity's fourth obligation to provide direct services confers a direct benefit to Decedent by facilitating her cremation.  It is of course conceivable that Unity's performance of the basic services may also benefit Plaintiffs by, for example, relieving them of the burden of securing necessary authorizations and coordinating Decedent's transfer to Unity.  But "it is not enough that some benefit incidental to the performance of the contract may accrue" to Plaintiffs.  *McPheeters* v. *McGinn, Smith & Co., Inc.*, 953 F.2d 771, 773 (2d Cir. 1992); *accord Nasdaq, Inc.* v. *Exchange Traded Managers Grp., LLC*, No. 17 Civ. 8252 (PAE), 2018 WL 3996932, at *10 (S.D.N.Y. Aug. 21, 2018) (describing the "prototypical" incidental beneficiary as "one that 'may derive benefit from the performance of a contract though it is neither the promisee nor the one to whom performance is to be rendered'" (internal brackets omitted) (quoting *Del Norte* v. *WorldBusiness Cap., Inc.*, No. 14 Civ. 10143 (CM), 2017 WL 4334005, at *12 (S.D.N.Y. Apr. 5, 2017))).  And here,

_____

the transportation of the remains by livery to the crematorium and the return of the remains to the funeral firm").  Unity does not address either Plaintiffs' arguments or the applicable state regulations.  Based on its review of this regulatory framework, the Court is persuaded that Decedent necessarily purchased basic services when she purchased direct cremation.

Plaintiffs do not allege that Decedent purchased the basic services package for their benefit, and the Preneed Agreement does not indicate that Unity agreed to perform any of the services on Plaintiffs' behalf.  *Cf. Levin* v. *Tiber Holding Corp.*, 277 F.3d 243, 249 (2d Cir. 2002) (finding intended third-party beneficiary where performance of promisor's obligations was rendered directly to third party); *Flickinger* v. *Harold C. Brown & Co., Inc.*, 947 F.2d 595, 600 (2d Cir. 1991) (finding that plaintiff was third-party beneficiary to contract between his stockbroker and brokerage firm, where contract required firm to provide certain services to plaintiff); *Melvin* v. *Cnty. of Westchester*, No. 14 Civ. 2995 (KMK), 2016 WL 1254394, at *22 (S.D.N.Y. Mar. 29, 2016) (holding that plaintiff was a third-party beneficiary of a contract for the provision of health services to inmates and detainees at the jail where he was incarcerated).  Thus, the terms of the Preneed Agreement fail to demonstrate Decedent's or Unity's intent to provide anything more than an incidental benefit to Plaintiffs.

*Second,* the circumstances surrounding Decedent's decision to enter into the Preneed Agreement also counsel against finding that Plaintiffs are third-party beneficiaries of the Agreement.  Plaintiffs allege that "Decedent entered into a contract with Defendant Unity … to ensure the protection and sheltering and ultimately, the disposition of her remains in an individual, dignified, respectful and lawful manner." (SAC ¶ 61).  Plaintiffs' allegations indicate that Decedent did not enter into the Preneed Agreement to confer a benefit on them, but instead to ensure that her desire to be cremated would be honored upon her death.  These allegations, which are consistent with the plain terms of the

14

Agreement, further demonstrate that Plaintiffs are at most incidental beneficiaries of Decedent's Preneed Agreement.

*Lastly*, Plaintiffs' arguments in favor of finding them third-party beneficiaries are unavailing.  Plaintiffs allege that they are listed in the Preneed Agreement as "Alternative Person to be notified as next of kin," supposedly demonstrating the Agreement's intent to provide them with a direct benefit.  (SAC ¶ 61).  In fact, the Agreement does not list Plaintiffs, or anyone else, as Decedent's next-of-kin.  (*See* Preneed Agreement).  Rather, the provision to which Plaintiffs point provides only that Plaintiffs are to be notified "in the event that "the person making payments cannot be contacted[.]"  (*Id.*).  The provision is clear that, if Decedent "cannot be contacted, notices or other communications will be sent to" Plaintiffs at their home addresses.  (*Id.*).  The provision does not obligate Unity to contact Plaintiffs upon Decedent's passing, nor does it confer any other benefit on Plaintiffs that would evince an intent to provide them with enforcement rights under the Agreement.

Based on the language of the Decedent's Preneed Agreement, as well as the circumstances under which it was executed, the Court finds that Plaintiffs are not third-party beneficiaries of the Agreement and thus cannot bring a claim for breach of contract pursuant to it.  *See Subaru Distributors Corp.*, 425 F.3d at 124; *see also In re Corp. Res. Servs., Inc.*, 849 F. App'x 320, 323 (2d Cir. 2021) (summary order) (affirming district court's finding that a party lacked standing to enforce contract where "neither the express terms of the contract

15

nor its surrounding circumstances demonstrated the intent to make [the party] a third party beneficiary").

### b.    The Oral Agreement

The Court now turns to Plaintiffs' second alleged agreement with Unity. Plaintiffs state that they entered into the Oral Agreement with Unity during Watkins's phone conversation with Unity on or about December 5, 2019.  (SAC ¶¶ 12, 61).  Plaintiffs further allege that Unity breached the Oral Agreement by failing to arrange for Decedent's transport and storage between the formation of the Oral Agreement and Plaintiffs' arrival in New York on December 9, 2019. (*Id.* at ¶ 64).  In response, Unity argues that Plaintiffs have failed to allege the material terms of the contract, including (i) the performance Unity agreed to assume under the contract, or (ii) what Plaintiffs agreed to provide in return for Unity's performance.  (Unity Br. 14; Unity Reply 4).  As it will explain below, the Court agrees that Plaintiffs have failed to allege the material terms of the Oral Agreement, and thus that the Agreement is unenforceable.

"[A] court cannot enforce a contract unless it is able to determine what in fact the parties have agreed to."  *166 Mamaroneck Ave.* v. *151 E. Post Rd. Corp.*, 78 N.Y.2d 88, 91 (1991).  "The law is clear that although the parties may intend to enter into a contract, if essential terms are omitted from their agreement, or if some of the terms included are too indefinite, no legally enforceable contract will result."  *V'Soske* v. *Barwick*, 404 F.2d 495, 500 (2d Cir. 1968); *accord Hudson & Broad, Inc.* v. *J.C. Penney Corp., Inc.*, 553 F. App'x 37, 39 (2d Cir. 2014) (summary order) (observing that it is a "well-settled principle of New York

16

law" that "if an agreement is not reasonably certain in its material terms, there can be no legally enforceable contract" (internal brackets omitted)).  "[U]nder New York law, a term is essential if it seriously affects the rights and obligations of the parties." *Morelli* v. *Alters*, No. 19 Civ. 10707 (GHW), 2020 WL 1285513, at *9 (S.D.N.Y. Mar. 18, 2020) (internal quotation marks omitted).  As relevant here, "[t]he consideration to be paid under a contract is a material term." *Gutkowski* v. *Steinbrenner*, 680 F. Supp. 2d 602, 610 (S.D.N.Y. 2010); *see also Cooper Square Realty, Inc.* v. *A.R.S. Mgmt., Ltd.*, 581 N.Y.S.2d 50, 51 (1st Dep't 1992) ("As price is an essential ingredient of every contract for the rendering of services, an agreement must be definite as to compensation.").

Here, Plaintiffs have failed to allege the price they agreed to pay for the services Unity purportedly agreed to provide under the Oral Agreement. Plaintiffs allege that on December 5, 2019, after learning of Decedent's death, they called to inform Unity that they were planning to drive to New York for Decedent's funeral, and that Unity agreed during the conversation to arrange for Decedent's transportation and storage.  (SAC ¶¶ 12-15, 62; *see also* Pl. Unity Opp. 12).  While Plaintiffs allege that an Oral Agreement was formed over the course of this conversation, they do not allege that they agreed to pay Unity for the services it was to perform under this Oral Agreement.  (*See* SAC ¶ 62; *see also id.* at ¶¶ 12-15).  Nor do Plaintiffs allege that "the amount can be determined objectively without the need for new expressions by the parties." *Douglas Elliman LLC* v. *Firefly Ent. Inc.*, 792 F. App'x 64, 67 (2d Cir. 2019) (summary order).  Without allegations establishing the price term of the alleged

Oral Agreement, Plaintiffs fail to put forward a plausible claim that either they or Unity intended to be bound by the Agreement.  *See Mark Bruce Int'l Inc.* v. *Blank Rome, LLP*, 876 N.Y.S.2d 19, 20 (1st Dep't 2009) (holding that the parties' "exchange of e-mails, which did not set forth the fee for plaintiff's services or an objective standard to determine it, was too indefinite to be enforceable"); *see also Gutkowski*, 680 F. Supp. 2d at 611 (finding "Plaintiff's allegations that Defendant promised that Plaintiff would be 'compensated fairly' or 'fairly compensated' … are insufficiently definite as a matter of law"); *United Res. Recovery Corp.* v. *Ramko Venture Mgmt., Inc.,* No. 07 Civ 9452 (RWS), 2009 WL 2746232, at *6 (S.D.N.Y. Aug. 28, 2009) (concluding that one party's "vague and ambiguous statement that [the other party] would be 'taken care of' is too indefinite to form a legally enforceable contract").

Furthermore, even if the Court were to find that the Oral Agreement was sufficiently definite, it would conclude that Plaintiffs have not plausibly alleged that Unity breached the Agreement.  Plaintiffs allege that the Oral Agreement obligated Unity to "obtain and ensure the protection and sheltering and ultimately, the disposition of [D]ecedent's remains" (SAC ¶ 62), but this conclusory allegation does not plausibly establish a claim for breach of contract when considered alongside Plaintiffs' other allegations concerning Watkins's December 5, 2019 call with Unity and Unity's subsequent conduct. *See Xin Wei Lin* v. *Chinese Staff & Workers' Ass'n*, No. 11 Civ 3944 (RJS), 2012 WL 5457493, at *4 (S.D.N.Y. Nov. 8, 2012) (noting that "contradictory allegations cannot support Plaintiffs' pleading burden"), *aff'd,* 527 F. App'x 83

18

(2d Cir. 2013) (summary order).  As Plaintiffs allege elsewhere in the SAC, during Watkins's calls with Unity, "Unity informed Watkins at that time they were out of refrigeration space and that they would contact [Harlem Center] to tell them to call the morgue and have Decedent's remains taken there until Unity had space."  (SAC ¶ 14).  On this account, Unity agreed to alert Harlem Center to Unity's lack of refrigeration space and to direct it to release Decedent's body to the morgue.  (*Id.*).  And, as Plaintiffs further allege, following Watkins's call with Unity, Unity's funeral director discharged its agreed-upon responsibilities, calling Harlem Center "several times until he reached someone to tell them that Unity did not have refrigeration space and that [Harlem Center] was to call the morgue to have the body taken there."  (*Id.* at ¶ 15).  Thus, on Plaintiffs' own articulation of the terms of the Oral Agreement, Unity did not commit any breaches.

As Plaintiffs are unable to pursue the enforcement of either the Preneed Agreement or the Oral Agreement, and as they have additionally failed to plead any breach of the Oral Agreement, the Court grants Unity's motion to dismiss Plaintiffs' claim for breach of contract.[7]

---

[7]     For reasons stated earlier in this Opinion, the Court declines to consider Plaintiffs' memorialization of the Oral Agreement, which Plaintiffs raised for the first time in their opposition brief.  *See supra* note 2.  Even if the Court were to consider the written agreement, however, it would still find that Plaintiffs have failed to state a claim against Unity for breach of contract.  Plaintiffs contend that Plaintiffs and Unity reduced the Oral Agreement to writing on December 8, 2019 — the day Unity cremated Decedent. (*See* Pl. Unity Opp. 3; *see also id.*, Ex. C (the "Funeral Services Agreement")).  This allegation does not affect the outcome of the Court's analysis for several reasons.  *See generally Winston* v. *Mediafare Entm't Corp.*, 777 F.2d 78, 80 (2d Cir. 1985) (describing factors courts should consider when evaluating whether parties intended oral agreements to be fully binding).  To begin, Plaintiffs cannot recover under a written contract entered into on December 9, 2019, for actions Unity took prior to that time. Furthermore, the parties' written agreement undermines Plaintiffs' claim that the Oral

### 2.   The Court Dismisses Plaintiffs' Claim for Breach of Fiduciary Duty

Plaintiffs' second claim against Unity is for breach of fiduciary duty.  To state a breach of fiduciary duty claim under New York law, a plaintiff must allege "(i) the existence of a fiduciary duty; (ii) a knowing breach of that duty; and (iii) damages resulting therefrom."  *Johnson* v. *Nextel Commc'ns, Inc.*, 660 F.3d 131, 138 (2d Cir. 2011).

The parties primarily dispute the first prong — whether Unity owed Plaintiffs a fiduciary duty.  "A fiduciary relationship arises when one is 'under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation.'"  *Saul* v. *Cahan*, 61 N.Y.S.3d 265, 268 (2d Dep't 2017) (quoting *Oddo Asset Mgmt.* v. *Barclays Bank PLC*, 19 N.Y.3d 584, 592-93 (2012)).  "Such a relationship may arise 'where one has reposed trust or confidence in the integrity or fidelity of another who thereby gains a resulting superiority of influence over the first, or when one assumes control and

---

Agreement constituted a final and binding agreement.  *See Powell* v. *Omnicom*, 497 F.3d 124, 130 (2d Cir. 2007) (observing that the Second Circuit has held that "even 'minor' or 'technical' changes arising from negotiations over the written language of an agreement can weigh against a conclusion that the parties intended to be bound absent a formal writing").  In contrast with the Oral Agreement, the Funeral Services Agreement provides a price term and describes the specific goods and services Unity will furnish.  (*See* Funeral Services Agreement).  Moreover, the Funeral Services Agreement contains numerous terms not included in either the Oral Agreement or the Preneed Agreement.  (*See id.*).  The differences in the terms contained in the Oral Agreement and the Funeral Services Agreement indicate that Plaintiffs and Unity did not reach a final, binding agreement until they finalized the Funeral Services Agreement.  *See Rule* v. *Brine, Inc.*, 85 F.3d 1002, 1010 (2d Cir. 1996) ("In general, under New York law no enforceable contract comes into being when the parties leave a material term for future negotiations ...").  For all of the foregoing reasons, the Court finds that even were it to consider the Funeral Services Agreement — which it cannot do on the instant motion — such consideration would not alter the Court's conclusion that Plaintiffs fail to state a plausible claim against Unity for breach of contract.

responsibility over another.'"  *Mueller* v. *Michael Janssen Gallery Pte. Ltd.*, 225

F. Supp. 3d 201, 205 (S.D.N.Y. 2016) (quoting *VTech Holdings, Ltd.* v.

*Pricewaterhouse Coopers, LLP*, 348 F. Supp. 2d 255, 268 (S.D.N.Y. 2004)).

Generally, "a conventional business relationship, without more, is insufficient

to create a fiduciary relationship."  *AHA Sales, Inc.* v. *Creative Bath Prods.,*

*Inc.*, 867 N.Y.S.2d 169, 181 (2d Dep't 2008); *see also PetEdge, Inc.* v. *Garg*, 234

F. Supp. 3d 477, 498 (S.D.N.Y. 2017) ("[A]n arms-length commercial

transaction generally does not give rise to a fiduciary relationship." (quoting

*Silva Run Worldwide Ltd.* v. *Gaming Lottery Corp.*, No. 96 Civ. 3231 (RPP), 2001

WL 396521, at *9 (S.D.N.Y. Apr. 19, 2001))).  "Rather, a plaintiff must make a

'showing of "special circumstances" that could have transformed the parties'

business relationship to a fiduciary one, such as control by one party of the

other for the good of the other.'"  *Saul*, 61 N.Y.S.3d at 268 (quoting *L. Magarian*

*& Co., Inc.* v. *Timberland Co.*, 665 N.Y.S.2d 413, 414 (1st Dep't 1997)).

      Here, Plaintiffs do not identify special circumstances sufficient to

transform their business relationship with Unity into a fiduciary one.  Although

"[a]t the heart of the fiduciary relationship lies reliance, and de facto control

and dominance," *Krys* v. *Butt*, 486 F. App'x 153, 155 (2d Cir. 2012) (summary

order) (quoting *United States* v. *Chestman*, 947 F.2d 551, 568 (2d Cir. 1991)),

Plaintiffs do not allege that they subjected themselves to Unity's control.

Rather, Plaintiffs contend that the sensitive nature of Unity's alleged agreement

to arrange for Decedent's transportation and storage, together with Plaintiffs'

understandably vulnerable emotional state at the time, are sufficient to create

a fiduciary relationship with Unity.  (*See* SAC ¶¶ 68-70; *see also* Pl. Unity Opp. 14-15).  To be clear, the Court recognizes the sensitivity of the responsibilities Plaintiffs entrusted to Unity, but it disagrees that these responsibilities alone are sufficient to create a fiduciary relationship between the parties.  On Plaintiffs' theory, every funeral home would owe fiduciary duties to every customer.  The Court has not found any authority to support that theory.  In fact, in a well-researched opinion surveying state and federal courts' treatment of similar claims, a federal judge reached the opposite conclusion — namely, that funeral homes do not ordinarily owe their customers fiduciary duties.  *See Jackson* v. *McKay-Davis Funeral Home, Inc.*, 830 F. Supp. 2d 635, 649 (E.D. Wis. 2011) ("No court addressing the issue has held that funeral homes owe a fiduciary duty to their bereaved customers.") (collecting cases).

In light of Plaintiffs' failure to allege additional facts indicating that they engaged in more than an "arms-length commercial transaction" with Unity, the Court finds that Plaintiffs have failed to state a claim for breach of fiduciary duties.  *In re Mid-Island Hosp., Inc.*, 276 F.3d 123, 130 (2d Cir. 2002) (affirming dismissal of fiduciary duty claim because "there is no allegation of anything other than an ordinary commercial relationship"); *PetEdge, Inc.*, 234 F. Supp. 3d at 498 (dismissing fiduciary duty claim "because the second amended complaint fails to allege a relationship between PetEdge and Garg that goes beyond an ordinary business relationship"); *cf. United States* v. *Kosinski*, 976 F.3d 135, 146 (2d Cir. 2020) (finding fiduciary relationship where agent

"expressly agreed to keep [principal's] information confidential" and where relationship concerned matters of "life and death"). Accordingly, the Court grants Unity's motion to dismiss Plaintiffs' claim for breach of fiduciary duty.

### 3. The Court Dismisses Plaintiffs' Claim for Mishandling of Remains

Plaintiffs' third claim against Unity is for the mishandling of remains. Although not expressly styled as such, Plaintiffs' claim is traceable to the common law right of sepulcher. "The common-law right of sepulcher gives the next of kin the absolute right to the immediate possession of a decedent's body for preservation and burial or other disposition of the remains, and damages may be awarded against any person who unlawfully interferes with that right or improperly deals with the decedent's body." *Mack* v. *Brown*, 919 N.Y.S.2d 166, 169 (2d Dep't 2011). The right is premised on "the legal right of the surviving next of kin to find 'solace and comfort' in the ritual of burial." *Melfi* v. *Mount Sinai Hosp.*, 877 N.Y.S.2d 300, 304 (1st Dep't 2009). New York courts have recognized sepulcher claims where, for example, a defendant is charged with performing an "unauthorized autopsy, or … disposing of the remains inadvertently, or … fail[ing] to notify next of kin of the death." *Id.* at 309 (internal citations omitted); *see also Massaro* v. *Charles J. O'Shea Funeral Home*, 738 N.Y.S.2d 384, 351 (2d Dep't 2002) (collecting cases).

In this case, Plaintiffs fail to state a claim against Unity for loss of sepulcher. Plaintiffs do not allege that Unity interfered with their right to possess Decedent's body, but rather that Unity "mishandl[ed] and/or improperly deal[t] with [D]ecedent's remains[.]" (SAC ¶ 80). Plaintiffs do not,

however, identify any improper actions Unity took with respect to Decedent's body.  Indeed, Plaintiffs do not allege that Unity mishandled Decedent's body once it was in Unity's possession, and it is difficult to see how Unity could have mishandled or improperly dealt with Decedent's body before Unity possessed it. *See Fox* v. *Mark*, 118 N.Y.S.3d 726, 729 (2d Dep't 2020) (affirming grant of summary judgment where it was undisputed that defendants "never had possession of the decedent's body").[8]

Plaintiffs contend that Unity's lack of possession of Decedent's remains is not dispositive because the violation of their right of sepulcher arises "mainly because of Unity's failure to obtain the necessary permits and facilitate the transport and possession of Decedent's remains[.]"  (Pl. Unity Opp. 16).  But courts recognizing claims of interference with the right of sepulcher have done so where the defendant possessed the decedent's body and is charged with either impeding the plaintiff's right to possess the decedent or with mishandling the decedent's remains.  *See Melfi*, 877 N.Y.S.2d at 309 (listing examples).  Plaintiffs do not plausibly allege that Unity's inaction — specifically, its failure to arrange for the transportation of Decedent's remains

---

[8]    At one point, Plaintiffs allege that Unity violated the "laws and regulations of the State of New York."  (SAC ¶ 80).  But nowhere in the SAC do Plaintiffs identify the particular laws and regulations that Unity violated, or explain in anything other than conclusory terms how Unity violated the relevant legal standards.  (*See id.* at ¶¶ 26-27 (alleging certain regulations that apply to nursing homes); *id.* at ¶ 80 (alleging that Unity violated New York laws and regulations by "mishandling and/or improperly dealing with [D]ecedent's remains")).  To the extent that Plaintiffs seek to pursue a sepulcher claim based on Unity's alleged statutory and regulatory violations, the Court finds their claim to be insufficiently supported to survive Unity's motion to dismiss.  *See Rodriguez* v. *City of New York*, 649 F. Supp. 2d 301, 308 (S.D.N.Y. 2009) ("A claim that rests only on conclusory allegations cannot survive a motion to dismiss.").

24

from Harlem Center to Unity or the morgue (SAC ¶¶ 17, 77) — constitutes mishandling of Decedent's remains despite the fact that Unity did not possess Decedent's remains.  Accordingly, the Court grants Unity's motion to dismiss Plaintiffs' claim for mishandling of remains.

### 4.    The Court Sustains Plaintiffs' Claim for Negligence

Plaintiffs' fourth claim against Unity is for negligence.  "The elements of a negligence claim under New York law are: (i) a duty owed to the plaintiff by the defendant; (ii) breach of that duty; and (iii) injury substantially caused by that breach."  *Pasternack* v. *Lab'y Corp. of Am. Holdings*, 807 F.3d 14, 19 (2d Cir. 2015) (internal quotation marks omitted).

Plaintiffs allege that Unity owed them a duty of care in "caring for and handling Decedent's body and/or remains and carrying out their duties," and that Unity breached that duty of care "by failing to use the accepted degree of professional skill and care as others in the same profession(s) and communities[.]"  (SAC ¶¶ 94-95).  Unity moves to dismiss Plaintiffs' negligence claim on the following grounds: (i) the claim is duplicative of Plaintiffs' breach of contract claim; (ii) Unity did not owe Plaintiffs a duty of care; and (iii) Unity did not breach any duty that it may have owed to Plaintiffs.  (Unity Br. 19-20; *see also* Unity Reply 7-8).  The Court discusses each argument in turn, but ultimately finds that Plaintiffs have plausibly alleged a negligence claim against Unity.

### a.   Plaintiffs' Negligence Claim Is Not Duplicative of Their Breach of Contract Claim

Unity's first argument in support of its motion to dismiss Plaintiffs' negligence claim is that the claim is duplicative of the breach of contract claim. As stated above, the Court finds that Plaintiffs have not stated a breach of contract claim against Unity.  The Court will not find that Plaintiffs' negligence claim is duplicative of a contract claim that Plaintiffs cannot pursue.  *See Poplar Lane Farm LLC* v. *Fathers of Our Lady of Mercy*, 449 F. App'x 57, 59 (2d Cir. 2011) (summary order) (observing that the principle that litigants may not repackage contract claims as tort claims "does not apply where there is a bona fide dispute as to the existence of a contract or where the contract does not cover the dispute in issue" (internal quotation marks omitted)); *MacCartney* v. *O'Dell*, No. 14 Civ. 3925 (NSR), 2016 WL 815279, at *7 (S.D.N.Y. Feb. 29, 2016) (rejecting argument that unjust enrichment claim should be dismissed as duplicative of dismissed contract claim); *164 Mulberry St. Corp.* v. *Columbia Univ.*, 771 N.Y.S.2d 16, 23 (1st Dep't 2004) (reasoning that "insofar as both libel and libel per se claims were dismissed ... it follows that dismissal of the intentional infliction of emotional distress claim is not required"); *cf. Wright* v. *Belafonte*, 687 F. App'x 1, 2 (2d Cir. 2017) (summary order) (suggesting that district court erred by dismissing claims for emotional distress as duplicative of libel claims where the court also dismissed the libel claims).

### b.   Plaintiffs Allege a Duty of Care

Unity's next argument is that Plaintiffs have failed to allege that Unity owed them a duty of care.  "In New York, the existence of a duty is a 'legal,

26

policy-laden declaration reserved for judges.'" *Sparago* v. *Beaver Mountain Log Homes, Inc.*, No. 20 Civ. 276 (KMK), 2021 WL 965448, at *5 (S.D.N.Y. Mar. 15, 2021) (internal brackets omitted) (quoting *Palka* v. *Servicemaster Mgmt. Servs. Corp.*, 83 N.Y.2d 579, 585 (1994)).  As relevant here, "anyone who voluntarily assumes a duty can be held liable for negligence in the performance of that duty." *Morgan Stanley & Co. Inc.* v. *JP Morgan Chase Bank, N.A.*, 645 F. Supp. 2d 248, 256 (S.D.N.Y. 2009); *see also Heard* v. *City of New York*, 82 N.Y.2d 66, 72 (1993) (noting that duty may arise where "a person undertakes a certain course of conduct upon which another relies"); *Wolf* v. *City of New York*, 39 N.Y.2d 568, 573 (1976) ("Where a person voluntarily assumes the performance of a duty, he is required to perform it carefully, not omitting to do what an ordinarily prudent person would do in accomplishing the task."); *Esen* v. *Narian*, 63 N.Y.S.3d 493, 494 (2d Dep't 2017) ("One who assumes a duty to act, even though gratuitously, may thereby become subject to the duty of acting carefully." (internal brackets omitted)).

Here, Plaintiffs have adequately alleged that Unity assumed a duty to Plaintiffs to arrange for Decedent's transportation and storage.  Specifically, Plaintiffs allege that "Unity owed Plaintiffs a duty to use reasonable care and skill in the professional services they provided, including but not limited to … in caring for and handling Decedent's body and/or remains and carrying out their duties."  (SAC ¶ 94).  Plaintiffs do not allege or argue that Unity's duty stemmed from the terms of the Preneed Agreement or the alleged Oral Agreement.  (Pl. Unity Opp. 17-19; *see also* SAC ¶ 14).  Rather, Plaintiffs allege

that Unity's duty arose after it informed Plaintiffs that it did not have sufficient refrigeration space for Decedent, but that it would direct Harlem Center to have Decedent's body taken to the morgue until Unity could retrieve it.  (SAC ¶ 14).

Plaintiffs further allege that, from the time of that conversation to the time they arrived in New York, they were relying on Unity to perform its obligations consistent with its status as a "licensed funeral home."  (Pl. Unity Opp. 17-18).  "As a general matter, one who undertakes to render services in the practice of a profession or trade is 'held to the level of skill and care used by others in the community who practice the same profession or trade.'" *Abrams* v. *Bute*, 27 N.Y.S.3d 58, 63 (2d Dep't 2016) (internal brackets and citation omitted).  As such, "[p]rofessionals … may be subject to tort liability for failure to exercise reasonable care, irrespective of their contractual duties." *Landon* v. *Kroll Lab'y Specialists, Inc.*, 934 N.Y.S.2d 183, 189 (2d Dep't 2011) (quoting *Sommer* v. *Fed. Signal Corp.*, 79 N.Y.2d 540, 551 (1992)), *aff'd*, 22 N.Y.3d 1 (2013); *see also id.* (collecting cases discussing the standard of care owed by, *inter alia*, physicians, psychologists, lawyers, accountants, engineers, social workers, and laboratory testing providers).  The Court finds that, by indicating to Plaintiffs that it would coordinate with Harlem Center to arrange for Decedent's transportation and storage, Unity took on a duty to act as a reasonably prudent funeral home toward Plaintiffs.  *See Abrams*, 27 N.Y.S.3d at 63 (concluding that pharmacist and pharmacy owed a duty to a customer because of their filling and dispensing his prescription); *Kroll Lab'y Specialists,*

*Inc.*, 934 N.Y.S.2d at 189 (finding duty of care where defendant undertook to perform forensic toxicology testing).

### c.    Plaintiffs Allege a Breach of a Duty of Care

Unity's final argument is that Plaintiffs have not alleged a breach of any duty of care Unity owed to Plaintiffs.  The Court disagrees.  Plaintiffs argue that Unity breached its duty of care in at least two ways.  *First*, Unity failed to arrange for the transportation of Decedent's body to an appropriate storage location, despite its indication to Watkins on the initial December 5, 2019 phone call that it would do so.  (SAC ¶¶ 14, 32, 95).  *Second*, between Unity's two phone calls with Watkins on December 5, 2019, and Plaintiffs' arrival in New York on December 9, 2019, Unity failed to either (i) confirm the location of Decedent's body or (ii) alert Plaintiffs to the fact that it did not know Decedent's location.  (*Id.* at ¶¶ 30, 39, 50; Pl. Unity Opp. 17-19).  Indeed, when Plaintiffs arrived in New York, Unity confessed that it did not have possession of Decedent's body and that it would call the local morgues to find out where it was located.  (SAC ¶¶ 20-22).  It was not until Unity made several unsuccessful calls that it realized that Decedent was likely still located at Harlem Center. (*Id.*).  Plaintiffs allege that, had Unity not committed these breaches of its duty of care, they would have had "options on maintaining their Mother's remains and [giving] her some dignity until she could be cremated."  (Pl. Unity Opp. 18; *see also* SAC ¶ 93).

Unity's arguments against finding an alleged breach of its duty of care miss the mark.  Unity advances three primary arguments: (i) Unity discharged

its duty of care by calling Harlem Center and instructing Harlem Center to have the morgue retrieve Decedent's body; (ii) Plaintiffs do not allege how Unity's behavior fell short of a reasonable funeral home's behavior; and (iii) Plaintiffs cannot allege that Unity breached a duty because Decedent was ultimately cremated in accordance with her wishes.  (Unity Br. 20; Unity Reply 7-8).

*First*, the Court rejects Unity's argument that Plaintiffs' negligence claim should be dismissed because Unity did not breach its duty of care.  Plaintiffs have plausibly alleged that Unity breached its duty of care by failing to ensure that Decedent's body was transported to an appropriate storage location and, further, by failing to communicate with Plaintiffs about its lack of knowledge regarding the body's location.  (*See* SAC ¶¶ 30, 32; *see also* Pl. Unity Opp. 18-19).  Plaintiffs' allegations are sufficient at this stage of the case.  Ultimately, whether Unity did in fact breach its duty is an issue that must be resolved by the factfinder.  *See Lombard* v. *Booz-Allen & Hamilton, Inc.*, 280 F.3d 209, 215-16 (2d Cir. 2002) ("Under New York law … decisions as to a lack of reasonable care and its nexus to a plaintiff's injury are quintessential jury questions[.]"); *Gonzalez* v. *Caballero*, 572 F. Supp. 2d 463, 467 (S.D.N.Y. 2008) ("Once the court has determined the existence of a duty of care, it is then the factfinder's job to determine whether the duty was breached and, if so, whether the breach was the proximate cause of plaintiff's injury."); *Palka*, 83 N.Y.2d at 585 (noting that foreseeability and causation "are issues generally and more suitably entrusted to fact finder adjudication").

30

*Second*, Unity's argument that Plaintiffs have not identified the applicable standard of care overlooks Plaintiffs' allegation that Unity breached its duty "by failing to use the accepted degree of professional skill and care as others in the same profession(s) and communities[.]"  (SAC ¶ 95; *see also* Pl. Unity Opp. 18 (arguing that Unity had a duty "to perform the services of a licensed funeral home in a manner consistent with the norms and practices of the industry")).

*Third* and finally, Unity's argument that Plaintiffs fail to allege a breach of Unity's duty because Decedent was ultimately cremated can be quickly dispensed with because it misapprehends the nature of Plaintiffs' negligence claim.  Plaintiffs bring their claim based on the duties they allege Unity owed them, not Decedent; Unity's ultimate cremation of Decedent does not preclude Plaintiffs from alleging a plausible negligence claim based on Unity's alleged breach prior to the cremation.

Because Plaintiffs have plausibly alleged that Unity owed them a duty, that Unity breached its duty, and that Unity's breach resulted in damages, the Court denies Unity's motion to dismiss Plaintiffs' negligence claim.[9]

---

[9]     Although not raised in either Unity's or Plaintiffs' briefing, the Court notes that "[a] party can recover for emotional injury resulting from a breach of duty of care under New York law even if no physical injury occurs."  *Sesto* v. *Slaine*, 171 F. Supp. 3d 194, 203 (S.D.N.Y. 2016).  In order to do so, the party must show that the mental injury is "'a direct, rather than a consequential, result of the breach,' and the claim must possess 'some guarantee of genuineness.'"  *Taggart* v. *Costabile*, 14 N.Y.S.3d 388, 398 (2d Dep't 2015) (first quoting *Kennedy* v. *McKesson Co.*, 58 N.Y.2d 500, 506 (1983); then quoting *Ferrara* v. *Galluchio*, 5 N.Y.2d 16, 21 (1958)).  Courts have found that there is a guarantee of genuineness where a party alleges that another's behavior resulted in the mishandling of their family member's body.  *See Sesto*, 171 F. Supp. 3d at 204 ("The 'guarantee of genuineness' element can be satisfied by showing a particular kind of negligence recognized by the courts (*e.g.*, mishandling of a corpse; transmitting false information that a loved one has died)[.]"); *see also Brijall* v. *R.G. Ortiz Funeral Home,*

### 5.    The Court Dismisses Plaintiffs' Claim for Negligent Infliction of Emotional Distress

Plaintiffs' fifth claim against Unity is for negligent infliction of emotional distress.  "Generally, a cause of action for infliction of emotional distress is not allowed if essentially duplicative of tort or contract causes of action."  *Wolkstein* v. *Morgenstern*, 713 N.Y.S.2d 171, 172 (1st Dep't 2000).

Here, Plaintiffs' claim for negligent infliction of emotional distress must be dismissed because it is duplicative of their claim for negligence.  Fatally, both claims rest on the same facts and seek the same damages.  "Plaintiff[s] may recover for emotional distress caused by defendants' alleged conduct under the cause[] of action for negligence," but they cannot seek to recover the same damages for the same conduct under the cause of action for negligent infliction of emotional distress.  *See Fay* v. *Troy City Sch. Dist.*, — N.Y.S.3d —, 2021 WL 4201570, at *1 (3d Dep't Sept. 16, 2021) (dismissing negligent infliction of emotional distress claim as duplicative of cause of action for negligence and other related claims); *Caravalho* v. *City of New York*, No. 13 Civ. 4174 (PKC) (MHD), 2016 WL 1274575, at *23 (S.D.N.Y. Mar. 31, 2016) (dismissing as duplicative negligent infliction of emotional distress claim because "the conduct at issue — [defendant's] allegedly unreasonable use of force — and any resulting emotional damage is entirely subsumed by

*Inc.*, 786 N.Y.S.2d 302, 303 (1st Dep't 2004) (finding that plaintiff's complaint stated claims for negligence and negligent infliction of emotional distress for interference with burial of plaintiff's decedent's body).

[plaintiff's]" other claims).  Accordingly, the Court grants Unity's motion to dismiss Plaintiffs' claim for negligent infliction of emotional distress.

### 6.    The Court Dismisses Plaintiffs' Claim for Punitive Damages

Plaintiffs' sixth and final claim against Unity is for punitive damages.  "A punitive damages claim is not a cause of action but is instead a form of relief." *Horowitz* v. *Spark Energy, Inc.*, No. 19 Civ. 7534 (PGG) (DCF), 2020 WL 4917180, at *6 (S.D.N.Y. Aug. 21, 2020); *see also Fishberg* v. *State Farm Fire & Cas. Co.*, No. 20 Civ. 6664 (LJL), 2021 WL 3077478, at *5 (S.D.N.Y. July 20, 2021) ("New York does not provide an independent cause of action for punitive damages."); *Rocanova* v. *Equitable Life Assurance Soc. of U.S.*, 83 N.Y.2d 603, 616 (1994) ("A demand or request for punitive damages is parasitic and possesses no viability absent its attachment to a substantive cause of action[.]").  Although Plaintiffs may not bring an independent cause of action for punitive damages, they may seek punitive damages in connection with their surviving negligence claim.  *See Kraycar* v. *Monahan*, 856 N.Y.S.2d 123, 124 (2d Dep't 2008) (listing the elements a claimant must satisfy to recover punitive damages under a negligence claim).  The Court takes no position at this time on the merits of Plaintiffs' request for such relief.  *See Jones* v. *City of New York*, No. 18 Civ. 1937 (VSB), 2020 WL 1644009, at *17 (S.D.N.Y. Apr. 2, 2020) ("Because punitive damages are a form of damages, not an independent cause of action, a motion to dismiss a prayer for relief in the form of punitive damages is procedurally premature." (internal quotation marks omitted) (quoting *Farina* v. *Metro. Transp. Auth.*, 409 F. Supp. 3d 173, 220 (S.D.N.Y.

2019))).  With that understanding, the Court grants Unity's motion to dismiss Plaintiffs' punitive damages claim.

## C.     The Court Grants in Part and Denies in Part Harlem Center's Motion to Dismiss

The Court turns next to Harlem Center's motion to dismiss.  Plaintiffs assert claims against Harlem Center for (i) mishandling of remains; (ii) negligence; (iii) negligent infliction of emotional distress; and (iv) punitive damages.  Harlem Center seeks the dismissal of each of these claims under Federal Rule of Civil Procedure 12(b)(6).  For the reasons that follow, the Court grants in part and denies in part Harlem Center's motion.

### 1.     The Court Sustains Plaintiffs' Claim for Mishandling of Remains

Plaintiffs' first claim against Harlem Center is for mishandling of remains.  As explained earlier, claims for mishandling of remains arise out of the common law right of sepulcher.  Although courts are in agreement that the right of sepulcher "gives the next of kin an absolute right to the immediate possession of a decedent's body for preservation and burial or other disposition of the remains, and damages may be awarded against any person who unlawfully interferes with that right or improperly deals with the decedent's body," *Mack*, 919 N.Y.S.2d at 169, there is some disagreement concerning the application of the right in practice, *see Bernstein* v. *Mount Ararat Cemetery Inc.*, No. 11 Civ. 68 (DRH), 2013 WL 1820911, at *2 (E.D.N.Y. Apr. 30, 2013) (noting that caselaw addressing the right of sepulcher is often "less than clear").  As Harlem Center stresses in its motion to dismiss, some cases can be read to

suggest that the right of sepulcher protects only a decedent's next-of-kin's right to possess the decedent's body, and that a claim for loss of sepulcher cannot be sustained where there was no interference with the plaintiff's possession. (Harlem Ctr. Br. 6-8; *see also* Harlem Ctr. Reply 2). *See, e.g.*, *Kennedy-McInnis* v. *Biomedical Tissue Servs., Ltd.*, 178 F. Supp. 3d 97, 103 (W.D.N.Y. 2016) (dismissing sepulcher claim where plaintiffs did not establish interference with their right of possession); *Shepherd* v. *Whitestar Dev. Corp.*, 977 N.Y.S.2d 844, 846 (4th Dep't 2014) ("To establish a cause of action for interference with the right of sepulcher, plaintiff must establish," among other things, that the "defendant interfered with plaintiff's right to immediate possession of the decedent's body").

The greater weight of authority holds, however, that the right of sepulcher is violated by either interference with, *or* the improper handling of, the decedent's remains. *See Almeyda* v. *Concourse Rehab. & Nursing Ctr., Inc.*, 150 N.Y.S.3d 67, 69 (1st Dep't 2021) (rejecting the argument that New York law limits "recovery under the common-law right of sepulcher only to instances where the next of kin is denied immediate possession of the decedent's body"); *Wainwright* v. *N.Y.C. Health & Hosps. Corp.*, 877 N.Y.S.2d 203, 203 (2d Dep't 2009) (affirming grant of summary judgment on issue of liability where hospital's mortuary failed to properly refrigerate a decedent for a period of five days before transfer to a funeral home); *Massaro*, 738 N.Y.S.2d at 386 (holding that the right of sepulcher allows the decedent's next-of-kin to "recover where one improperly deals with the decedent's body" (internal quotation marks

omitted)); *see also Bernstein* v. *Mount Ararat Cemetery Inc.*, No. 11 Civ. 68 (DRH) (WDW), 2012 WL 3887228, at *8 (E.D.N.Y. Sept. 7, 2012) ("New York courts have adopted language which recognizes recovery under the right of sepulcher in situations beyond where the defendant merely interferes with the 'immediate' right to possession …. Specifically, recovery is actionable where the defendant 'improperly deals' with the body."), *reconsideration denied*, 2013 WL 1820911 (E.D.N.Y. Apr. 30, 2013). Thus, a claim for loss of sepulcher will survive dismissal where the defendant is alleged to have either interfered with the possession of decedent's remains or improperly handled the remains.

Here, Plaintiffs have stated a plausible claim for loss of sepulcher on the grounds that Harlem Center mishandled Decedent's body. The Court considers instructive a recent First Department case permitting a mishandling of remains claim to proceed where the plaintiff found his father's body "in a closet-like room where supplies were kept" and observed that "his father's hands and feet were bound, his stomach had become bloated, he was dirty and unshaven, and a tube was placed down his throat." *Almeyda*, 150 N.Y.S.3d at 69. Plaintiffs allege similar facts here. Per the Second Amended Complaint, Harlem Center responded to Decedent's passing by moving her body to an unrefrigerated storage closet and keeping it there for approximately five days. (SAC ¶¶ 44-47). Due to the passage of time and lack of refrigeration, Decedent's body decomposed to such an extent that Plaintiffs were forced to cremate it immediately. (*Id.* at ¶ 54). These allegations are sufficient to state a claim for mishandling of remains. *See Almeyda*, 150 N.Y.S.3d at 70 ("That plaintiff

36

ultimately took custody of the decedent's body in a timely fashion does not assuage the harm caused by defendants having allegedly improperly dealt with it.").[10]  Accordingly, the Court denies Harlem Center's motion to dismiss Plaintiffs' claim for mishandling of remains.

### 2.     The Court Dismisses Plaintiffs' Claim for Negligence

Plaintiffs' second claim against Harlem Center is for negligence.  The Court finds that this claim must be dismissed because it is duplicative of Plaintiffs' claim for loss of sepulcher.  *See Shepherd*, 977 N.Y.S.2d at 847 (dismissing claim for negligent infliction of emotional distress as duplicative of claim for loss of sepulcher)*; see also Pennington* v. *D'Ippolito*, 425 F. Supp. 3d 222, 228 (S.D.N.Y. 2019) (noting that it is "well settled that negligence claims that are based on the same allegations and seek the same relief as malpractice claims must be dismissed as duplicative" (internal quotation marks omitted)); *cf. Wildenstein* v. *5H & Co, Inc.*, 950 N.Y.S.2d 3, 7 (1st Dep't 2012) (rejecting

---

[10]     Plaintiffs' loss of sepulcher claim is further supported by their allegation that Harlem Center interfered with their right of immediate possession of Decedent's body.  Plaintiffs allege that when they traveled to Harlem Center to retrieve Decedent's body, Harlem Center gave them the "runaround," forcing Plaintiffs to wait for two hours before Harlem Center brought them to the storage closet where Decedent's body was being stored. (SAC ¶ 44; Pl. Harlem Ctr. Opp. 10).  These allegations may also be sufficient to state a claim for loss of sepulcher.  As stated earlier, the right of sepulcher "gives the next of kin an absolute right to the *immediate* possession of a decedent's body for preservation and burial or other disposition of the remains, and damages may be awarded against any person who unlawfully interferes with that right or improperly deals with the decedent's body." *Mack*, 919 N.Y.S.2d at 169 (emphasis added).  While courts have found that lengthier delays have constituted interference with a next-of-kin's right to possession, *see, e.g.*, *Rugova* v. *City of New York*, 16 N.Y.S.3d 233, 238 (1st Dep't 2015) (holding that whether a 36-hour delay in informing next of kin that they could take possession of decedent's remains is an issue for the trier of fact), the Court need not decide whether Plaintiffs' allegation itself is sufficient to sustain a claim given its finding that Plaintiffs have stated a claim based on Harlem Center's mishandling of Decedent's body.

argument that conversion claim should be dismissed as duplicative where plaintiff alleges an "independent tort[]").

Plaintiffs allege the same facts under their sepulcher and negligence causes of action. With respect to the sepulcher claim, Plaintiffs allege that "[b]y mishandling and/or improperly dealing with [D]ecedent's remains, Defendant Harlem interfered with Plaintiffs' rights and responsibilities of sepulcher as to handle and dispose of familial remains in accordance with their wishes, religious beliefs and the laws and regulations of the State of New York." (SAC ¶ 90). Similarly, Plaintiffs allege with respect to the negligence claim that Harlem Center "completely disregarded the rights of Watkins and Tate to preserve [D]ecedent's remains and to be able to conduct a proper funeral and burial of [D]ecedent as per [D]ecedent's wishes." (*Id.* at ¶ 100). As "right of sepulcher cases are a subset of negligence actions," *In re Human Tissue Litig.*, 955 N.Y.S.2d 721, 732 (N.Y. Sup. Ct. 2012), the Court finds that Plaintiffs cannot maintain both sepulcher and negligence claims that are both dependent upon the same factual allegations. Accordingly, the Court grants Harlem Center's motion to dismiss Plaintiffs' claim for negligence.[11]

---

[11]    Plaintiffs also suggest that Harlem Center violated certain state regulations and public health guidance. (SAC ¶¶ 26-27). Plaintiffs' claim is unpersuasive for two reasons. *First*, Plaintiffs allege conclusorily that Harlem Center violated the regulations and guidance, but fail to relate the significance of the laws — or Harlem Center's alleged breach — to the claims set forth in the SAC. *Second*, as Harlem Center argues in its motion to dismiss, the New York State Department of Health Guidance cited in the SAC was published in 2020 — months after the events giving rise to this case. (Harlem Ctr. Br. 10). Plaintiffs fail to offer a satisfactory response, arguing only that "[t]he [publication of the Department of Health] guidance is after Decedent's date of death, but also appears to memorialize the appropriate and common sense practice of nursing home and rehabilitation centers[.]" (Pl. Harlem Ctr. Opp. 5). For these reasons, as well as those provided earlier with respect to Plaintiffs' similar claims against Unity, the

### 3. The Court Dismisses Plaintiffs' Claim for Negligent Infliction of Emotional Distress

Plaintiffs' third claim against Harlem Center is for negligent infliction of emotional distress.  As stated earlier, "[g]enerally, a cause of action for infliction of emotional distress is not allowed if essentially duplicative of tort or contract causes of action."  *Wolkstein*, 713 N.Y.S.2d at 172.  The Court finds that this claim also must be dismissed because it is duplicative of the claim for loss of sepulcher.  *See Shepherd*, 977 N.Y.S.2d at 847 (finding that "plaintiff failed to state a claim for negligent infliction of emotional distress independent of the emotional distress recoverable under a claim for loss of sepulcher").

To the extent that Plaintiffs seek to recover for emotional distress resulting from Harlem Center's alleged mishandling of Decedent's remains, they may do so as part of their cause of action for loss of sepulcher.  *See Shipley* v. *City of New York*, 908 N.Y.S.2d 425, 430-31 (2d Dep't 2010) ("A claim based on a violation of the right [of sepulcher] is designed to compensate the next of kin for the emotional suffering and mental anguish which they experience from the interference with their ability to properly bury their decedent."); *see also Kijak* v. *Columbia Presbyterian Hosp.*, No. 11 Civ. 6076 (NRB), 2013 WL 5299133, at *9 (S.D.N.Y. Sept. 20, 2013) ("If a violation of the right of sepulcher is established, the next of kin may be compensated for the emotional suffering and mental anguish which they experienced as a result.").

---

Court finds that Plaintiffs fail to allege that the guidance or other regulations bear on their negligence claim.  *See supra* note 8.

Accordingly, the Court grants Harlem Center's motion to dismiss Plaintiffs' claim for negligent infliction of emotional distress

### 4.   The Court Dismisses Plaintiffs' Claim for Punitive Damages

Plaintiffs' fourth and final claim against Harlem Center is for punitive damages.  As the Court did with respect to Plaintiffs' claim for punitive damages against Unity, the Court finds that Plaintiffs cannot bring an independent cause of action for punitive damages against Harlem Center, but may continue to seek punitive damages in connection with their remaining sepulcher claim.  *See Melfi*, 877 N.Y.S.2d at 310 (noting that punitive damages may be awarded in a loss of sepulcher claim).  The Court reiterates that it expresses no opinion at this time as to the ultimate merits of Plaintiffs' request for such damages.  Accordingly, the Court grants Harlem Center's motion to dismiss Plaintiffs' claim for punitive damages.

### CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Unity's and Harlem Center's motions to dismiss under Federal Rule of Civil Procedure 12(b)(6).  Unity's motion to dismiss is GRANTED with respect to Plaintiffs' claims for breach of contract, breach of fiduciary duty, mishandling of remains, and punitive damages.  Unity's motion is DENIED with respect to Plaintiffs' claim for negligence.

Separately, Harlem Center's motion to dismiss is GRANTED with respect to Plaintiffs' claims for negligence, negligent infliction of emotional distress, and

40

punitive damages.  Harlem Center's motion to dismiss is DENIED with respect to Plaintiffs' claim for mishandling of remains.

The parties are hereby ORDERED to submit a proposed case management plan to the Court on or before **October 18, 2021**.

The Clerk of Court is directed to modify the caption of the case as indicated above.  The Clerk of Court is further directed to terminate the motions at docket entries 38, 41, 48, and 51.

SO ORDERED.

Dated:      September 28, 2021
            New York, New York

_____
       KATHERINE POLK FAILLA
       United States District Judge